United States District Court
Middle District of Florida
Jacksonville Division

**TROY RENARD JOHNS,**

*Plaintiff,*

**v.**                                                        **NO. 3:25-cv-886-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

*Defendant.*

# Order

Proceeding under 42 U.S.C. § 405(g), the plaintiff requests judicial review of a final decision by the Commissioner of Social Security. Doc. 1. The procedural history, evidence, and law are summarized in the decision, Tr. 17–24, and the briefs, Docs. 18, 21, 22, and not fully repeated here. The pertinent period is November 1, 2021, to November 20, 2024. Tr. 24.

Section 405(g) provides the scope of review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating the scope of review for the review of a decision on supplemental security income). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted). A court may not decide facts anew, make credibility findings, or reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F. 4th 1315, 1320 (11th Cir. 2021).

The plaintiff was born in 1971, completed the ninth grade, and has worked in various jobs from time to time, including as a cook. Tr. 36, 202, 218, 224–27. In an application completed in November 2021, which followed an unfavorable decision finding that he suffered from severe but not disabling impairments, *see* Tr. 56–68, he alleged that he had stopped working in April 2014 because of his medical conditions, which he described as chronic back pain and a tear in his lower spine, Tr. 201, 208. In his answers to a pain questionnaire competed in December 2021, he said that his pain is in his lower back and moves down his right leg; his pain is moderate and results in spasms and a burning feeling; and he feels pain "all day, every day," worsening with activities ("bending, lifting, twisting, sitting still [for] too long, [and] walking too far"), lasting from a few hours to a few days, and preventing him from bending, lifting, squatting, and excessively walking or sitting. Tr. 212, 215. He reported taking hydrocodone and Flexeril and performing exercises learned during physical therapy. Tr. 215.

The Administrative Law Judge (ALJ) found that the plaintiff has not engaged in substantial gainful activity since his alleged onset date in November 2021. Tr. 19; *see* Tr. 34 (hearing testimony amending the alleged onset date). The ALJ observed that the plaintiff had testified that he had not

2

worked since 2014 but had told medical providers that he was working as a cook in 2023. Tr. 19; *see* Tr. 476, 500.

The ALJ found that the plaintiff had medically determinable impairments of degenerative disc disease, obesity, left-hip osteoarthritis, gastroesophageal reflux disease (GERD), depression, and anxiety. Tr. 19.

The ALJ found that the plaintiff did not have medically determinable impairments relating to reports about shoulder pain, carpal tunnel syndrome, and bipolar disorder. Tr. 19–20. The ALJ explained that, in response to complaints about shoulder pain in 2023, the plaintiff was encouraged to use ice, heat, and diclofenac gel, with a plan for diagnostic testing if no improvement was realized. By December 2023, he had no reports of shoulder pain, and in October 2024, he had a full range of shoulder motion. Tr. 19 (citing Exhibits B3F, B5F (Tr. 386–483, 492–524)). The ALJ found that clinical and laboratory findings were insufficient to establish carpal tunnel syndrome. Tr. 20 (citing Exhibit B7F (Tr. 534–548)). The ALJ found that clinical and laboratory findings likewise were insufficient to establish bipolar disorder, adding that "[w]hile the condition was diagnosed by a consultative psychological examiner, the extent of the symptoms the [plaintiff] reported to the examiner are highly inconsistent with his medical records which document only a history of mild depression and anxiety but that the [plaintiff] frequently experiences few if any depressive or anxiety symptoms." Tr. 20 (citing Exhibits B3F, B5F, B6F (Tr. 386–483, 492–533)).

The ALJ found that the plaintiff has no "impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months"

3

and "therefore, [he] does not have a severe impairment or combination of impairments." Tr. 20.

The ALJ stated that he had considered the plaintiff's reports and testimony. Tr. 21 (citing Exhibits B1E, B3E (Tr. 200–08, 212–17)). The ALJ found that "the medical evidence of record supports the presence of impairments that could reasonably be expected to cause the types of symptoms that the [plaintiff] alleges, but not nearly to the extent to which he alleges them." Tr. 21. The ALJ explained that the plaintiff's subjective complaints were "generally inconsistent with the evidence of record." Tr. 21.

The ALJ observed that the plaintiff "can care for his personal needs such as bathing and dressing, prepar[ing] meals, perform[ing] household chores, shopping, caring for pets, and exercis[ing] by walking." Tr. 21. The ALJ repeated that the plaintiff had "also worked as a cook in 2023[.]" Tr. 21. The ALJ found that the plaintiff "can engage in a wide variety of activities which is inconsistent with the degree of limitation alleged[.]" Tr. 21 (citing Exhibits B3F, B5F, B6F, B7F (Tr. 386–483, 492–548)).

The ALJ summarized the medical evidence. Tr. 21–22. The ALJ explained that the plaintiff has "a history of left hip mild osteoarthritis as shown on imaging from April 2021, along with left knee arthritis diagnosed in 2021[.]" Tr. 21 (citing Exhibit B3F (Tr. 386–483)). The ALJ observed that, when the plaintiff applied for benefits, he had alleged disability due only to back problems. Tr. 21. The ALJ added that the plaintiff had not "report[ed] any significant knee or hip issues to the consultative examiner in October 2024"; the plaintiff had not reported "any left hip or knee problems in 2022, 2023, or 2024"; and the "medical appointments and examinations of the lower

4

extremities are largely unremarkable[.]" Tr. 21 (citing Exhibits B1E, B3F, B5F (Tr. 200–08, 386–483, 492–524)).

The ALJ explained that, in 2024, the plaintiff was prescribed medication for GERD, but nothing indicated that the condition "causes any ongoing functional limitations[.]" Tr. 21 (citing Exhibits B3F, B5F (Tr. 386–483, 492–524)).

The ALJ summarized medical evidence about the plaintiff's back:

> [T]he [plaintiff] reported a history of back pain since 2012. A September 2020 MRI revealed disc degeneration at L4-5 and L5-S1 which had progressed since 2012. In February 2022, [he] was encouraged to do stretches at night for back spasms. In May 2023, [he] reported some increasing back pain. At the time, he was not currently taking any medications. He was encouraged to use ice and heat along with diclofenac gel and medications. In June 2023, [he] reported shoulder pain but did not report any specific back pain. Most recently in February 2024[], [he] had some rectal bleeding associated with Motrin, so he was prescribed gabapentin[.]

Tr. 21 (citing Exhibits B3F, B5F (Tr. 386–483, 492–524)).

The ALJ discussed the objective findings. Tr. 22. The ALJ observed that, "since November 1, 2021, gait findings are generally unremarkable, and the [plaintiff] has full strength in the upper and lower extremities." Tr. 22. The ALJ noted that the plaintiff "had some pain with motion of the lumbar spine and tenderness was noted along with variable straight leg raise test findings," but further noted, "the back pain has only required conservative treatment with back problems not consistently reported." Tr. 22. The ALJ emphasized that "the recent physical consultative examination report established nearly no significant abnormalities following a comprehensive physical examination

of the [plaintiff.]" Tr. 22 (citing Exhibits B3F, B5F, B7F (Tr. 386–483, 492–524, 534–48)).

The ALJ observed that the plaintiff is obese and "was encouraged to lose weight, change his diet, and increase his level of exercise." Tr. 22. The ALJ found that "nothing in the record indicates the obesity alone or in combination with other impairments, results in any significant functional limitations[.]" Tr. 22 (citing Exhibits B3F, B5F (Tr. 386–483, 492–524)).

The ALJ observed that, "[m]entally, the evidence documents a history of mild depression and anxiety." Tr. 22. The ALJ noted that the plaintiff "has received no specific treatment and often denies any symptoms[.]" Tr. 22 (citing Exhibits B3F, B5F (Tr. 386–483, 492–524)). The ALJ found that the plaintiff has mild limitations in the areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Tr. 22. The ALJ explained that "[a]lthough some memory issues were found during a consultative psychological examination, other records document intact memory." Tr. 22. The ALJ repeated that the plaintiff "remains able to engage in a variety of activities such as bathing and dressing, preparing meals, performing household chores, shopping, and caring for pets" and that he had "worked as a cook in 2023[.]" Tr. 22 (citing Exhibits B3F, B5F, B6F, B7F (Tr. 386–483, 492–548)). The ALJ explained that the plaintiff "attends church and spends time with family," "can care for personal needs," and had sought out medical care. Tr. 22.

The ALJ analyzed the opinion of consultative examiner Mateusz Lapucha, M.D. Tr. 23. The ALJ explained that Dr. Lapucha had opined that the plaintiff is not limited in sitting, standing, lifting, or carrying. Tr. 23. The

6

ALJ noted that Dr. Lapucha had tested the plaintiff's ability to lift a 10-pound weight above his head, and he "had no problem" doing that. Tr. 23. The ALJ observed that Dr. Lapucha had not indicated or tested the greatest weight that the plaintiff could lift, but had opined that the plaintiff has no limitations in lifting and carrying. Tr. 23. The ALJ observed that Dr. Lapucha had opined that the plaintiff "can only walk about 500 meters before succumbing to low back pain." Tr. 23. The ALJ found the latter opinion unpersuasive because it was not supported by Dr. Lapucha's report or consistent with other evidence. Tr. 23. The ALJ stated, "It appears the limitation to being only able to walk about 500 meters is based on the [plaintiff]'s self-report of such an ability at the beginning of Dr. Lapucha's examination." Tr. 23. The ALJ continued, "There is no evidence Dr. Lapucha tested the [plaintiff]'s ability to walk 500 meters, and Dr. Lapucha found the [plaintiff] had a normal gait." Tr. 23. The ALJ added, "Further, as outlined above, treatment records are largely unreadable with generally normal gait findings and only intermittent reports of back pain." Tr. 23 (citing Exhibits B3F, B5F, B7F (Tr. 386–483, 492–524, 534–548)). The ALJ concluded, "Given this evidence, Dr. Lapucha's opinion is not persuasive." Tr. 23.

The ALJ analyzed the opinion of consultative examiner Carmen Tozzo, Ph.D., and likewise found the opinion not persuasive. Tr. 23. The ALJ observed that Dr. Tozzo had opined that the plaintiff "will have trouble producing quality work consistently, is not able to learn new tasks, will have difficulty coping with routine changes and work stressors because of depression, and will have problems working with the public because of mood swings." Tr. 23. The ALJ found that "such restrictions are highly inconsistent with and unsupported by the evidence of record." Tr. 23. The ALJ added, "Dr. Tozzo's opinion is based on a single-visit evaluation of the [plaintiff] and, thus, relied

7

exclusively upon the [plaintiff]'s presentation and self-reporting of symptoms during that one evaluation." Tr. 23. "Contrastingly," the ALJ continued, "the [plaintiff] has reported few if any significant ongoing mental symptoms to his primary care providers frequently denying any anxiety or depression" and "has also remained able to interact socially and engage in a variety of activities that are inconsistent with Dr. Tozzo's opinion." Tr. 23. The ALJ again observed that the plaintiff had worked in 2023, "which is inconsistent with his report to Dr. Tozzo of last working in 2014." Tr. 23. The ALJ noted that Dr. Tozzo also had suggested the plaintiff has physical limitations, but the "finding is outside his area of expertise as a psychologist." Tr. 22 (citing Exhibit B6F (Tr. 525–33)).

The ALJ concluded, "Overall, … the available evidence does not establish an impairment or combination of impairments that significantly limits the [plaintiff]'s ability to perform basic work activities during the relevant period." Tr. 23. Accordingly, the ALJ found no disability. Tr. 23–24.

"The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A) (statutory definition); 20 C.F.R. § 416.909 ("Unless [the] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). To satisfy the definition, a claimant must have a severe impairment that makes him unable to perform his "past relevant work or any other substantial gainful work that exists in the national economy." 20 C.F.R. § 416.905(a) (internal citation omitted).

The Social Security Administration (SSA) uses a five-step sequential process to decide disability. *Id.* § 416.920(a)(4). If the SSA finds disability or no disability at a step, it will "not go on to the next step." *Id.*

At step one, an ALJ determines whether the claimant is engaged in "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If a claimant is not engaged in substantial gainful activity, the ALJ, at step two, will determine whether the claimant has a medically determinable physical or mental impairment that satisfies the 12-month duration requirement and, if yes, whether the impairment is "severe." *Id.* §§ 416.920(a)(4)(ii), 416.921.

An impairment (or combination of impairments) is severe if the impairment (or combination of impairments) significantly limits the claimant's physical or mental ability to do "basic work activities." *See id.* § 416.922(a) (defining when an impairment is not severe); *see also Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) ("The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account."); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (explaining that severity is measured based on the effect upon the ability to work, "not simply in terms of deviation from purely medical standards of bodily perfection or normality").

Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). Examples include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment";

9

"[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id*. "Inherent in a finding of a medically not severe impairment or combination of impairments is the conclusion that the individual's ability to engage in [substantial gainful activity] is not serious[ly] affected." SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).

The determination of whether an impairment is severe is a "threshold inquiry." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The step "allows only claims based on the most trivial impairments to be rejected." *Id.* The claimant's burden at this step is "mild." *Id.* "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* A claimant need only show that his "impairment is not so slight and its effect is not so minimal." *Id.*

In *Schink v. Commissioner of Social Security*, the Eleventh Circuit held that the record did not support that the claimant's bipolar disorder, mood disorder, and anxiety could be considered only "slight" or "trivial" abnormalities. 935 F.3d 1245, 1265 (11th Cir. 2019). The Eleventh Circuit explained that the impairments were serious enough that he was referred to and saw mental-health professionals over a period of years; every doctor who he saw diagnosed him with bipolar disorder or a comparable personality disorder and opined that the disorder significantly affected his mood, affect, and ability to interact with others; no state doctor disputed the diagnosis; the only state doctor who had examined him recorded traits corroborating a non-trivial personality disorder; the record reflected his impulsive and irascible tendencies spurring him into conflict with the people around him; his

10

GAF scores did not support a finding that the impairments should be considered "slight"; the ALJ's findings regarding mild limitations, used in part to support the non-severity finding, were not supported by substantial evidence; and the ALJ's finding that medication helped manage the symptoms pertained to later steps such that the effects of treatment were not substantial evidence to support the non-severity finding. *Id.* at 1265–67; *see also Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (explaining that someone "who suffers from pericarditis, hypoglycemia, vertebro vascular insufficiency, mental depression, and possible emphysema, is not suffering from a … slight abnormality or combination of slight abnormalities").

In contrast, in *Bridges v. Bowen*, the Eleventh Circuit held that an ALJ's finding that the claimant's impairments of hypertensive cardiovascular disease, angina, mild chronic obstructive pulmonary disease, and "status post an excision of an adenomatous polyp of the descending colon" were not severe was supported by substantial evidence, explaining that the record supported that the "impairments and related symptomology [we]re embraced within the meaning of a 'slight abnormality.'" 815 F.2d 622, 624, 626 (11th Cir. 1987); *see also Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 754 (11th Cir. 2011) (holding that an ALJ's finding that the claimant's hypertension, anxiety, and depression were not severe was supported by substantial evidence; the ALJ gave little weight to a non-treating doctor's opinion, whose report did not suggest that the claimant's hypertension "was serious enough to impair her ability to work"; nothing in the record suggested long-term functional limitations from the impairments; and the ALJ committed no error by giving weight to a psychologist's opinion that the claimant had a "high probability" of malingering); *Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269 (11th Cir. 2011) (holding that an ALJ's finding that the claimant's anxiety was not severe

11

was supported by substantial evidence; the ALJ observed that the claimant had never been referred for mental health treatment); *Salazar v. Comm'r of Soc. Sec.*, 372 F. App'x 64, 67 (11th Cir. 2010) (holding that an ALJ's finding that the claimant's hand injuries were not severe was supported by substantial evidence; the ALJ based the finding on the claimant's failure to attribute limitations to her hand injuries; a consultative examiner found no weakness in the claimant's hands, a finding consistent with "numerous" other medical sources; the claimant, who was represented by counsel, did not request a new exam; and the claimant's "daily activities were a permissible factor for the ALJ to consider in evaluating whether [the claimant's] account of her hand injuries was credible"); *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 849 (11th Cir. 2006) (holding that an ALJ's finding that the claimant suffered no severe mental health impairment was supported by substantial evidence; the ALJ gave no weight to a doctor's mental health evaluation because it was based on subjective complaints and not significant clinical findings; and the record contained no other evidence indicating a history of mental illness or treatment).

The plaintiff argues that the ALJ's finding that his impairments are not severe is not supported by substantial evidence. Doc. 18 at 11–23. To support this argument, the plaintiff contends that the decision is conclusory, Doc. 18 at 11–12; that the ALJ's reliance on his activities is dubious because they do not speak to his ability to work eight hours a day and five days a week on a continuous basis, Doc. 18 at 13–14; that the ALJ's reliance on his mention of working as a cook in 2023 is dubious because he mentioned that only once and only in the context of a complaint about pain, Doc. 18 at 15–16; that the ALJ erred in finding Dr. Tozzo's opinion unpersuasive on the ground that the plaintiff's physical limitations were outside of the doctor's expertise, Doc. 18 at

12

16; that the ALJ erred in finding Dr. Lapucha's opinion unpersuasive on the ground that the plaintiff had seen the doctor only once, which is true of all or nearly all consultative examinations, Doc. 18 at 17–18; and that the ALJ should have followed up with Dr. Lapucha rather than outrightly rejecting his opinion. Doc. 18 at 19–21.

Substantial evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 401) supports the ALJ's finding that the plaintiff's mental impairments (depression and anxiety) are not severe ("so slight," with "effects so minimal," that they "would clearly not be expected to interfere with [his] ability to work," *see McDaniel*, 800 F.2d at 1031 (quoted)), but fails to support the ALJ's finding that the plaintiff's physical impairments—at least his degenerative disc disease and left-hip osteoarthritis—are not severe, as the Eleventh Circuit has narrowly defined that term. The ALJ found that the medical evidence supports that the impairments could reasonably be expected to cause the pain that the plaintiff alleges, but not "nearly" the extent of the pain. Tr. 21. That finding left the ALJ with a finding that the plaintiff was experiencing some pain from the impairments, a finding supported by the plaintiff's repeated complaints about pain through the years and treatment with various pain medications. *See* Tr. 452–53, 457, 459, 461, 465, 468, 479, 514, 517, 521–22, 536, 540. A reasonable mind would not accept that the evidence is adequate to support that the pain is *so minimal* that it *clearly* would not be expected to interfere with the plaintiff's ability to work. Remand is warranted, and addressing each of the plaintiff's contentions is unnecessary.

The Commissioner's final decision is **reversed**, and the case is **remanded** for further proceedings to address whether the plaintiff has any

13

impairment that is severe and take any other necessary actions. The clerk is **directed** to enter judgment for Troy Renard Johns and against the Commissioner of Social Security and close the file.

**Ordered** in Jacksonville, Florida, on April 13, 2026.

Patricia D. Barksdale
United States Magistrate Judge

14